UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
JOHN DUFFY,                         )
                                    )
                Plaintiff,          )
                                    )
v.                                  )    Civil Action
                                    )    No. 16-10719-PBS
CAROLYN W. COLVIN, Acting           )
Commissioner, Social Security       )
Administration,                     )
                                    )
                Defendant.          )
_____)

## MEMORANDUM AND ORDER

August 7, 2017

SARIS, C.J.

Plaintiff John Duffy, who suffers from neck pain, moves to reverse the final decision of the Commissioner of the Social Security Administration denying his claim for disability benefits. He argues that the Administrative Law Judge ("ALJ") failed to properly consider the limited range of motion in his neck.

For the reasons set forth below, the Court **DENIES** Duffy's motion to reverse the Commissioner's decision (Docket No. 13) and **ALLOWS** the Commissioner's motion to affirm (Docket No. 17).

1

**BACKGROUND**

Duffy claims disability based on his history of neck and lower back pain. The alleged date of onset is November 1, 2011. He was forty-six years old at the alleged onset date.

**I.   Treatment History**

Duffy worked as a glazer until April 2009, when he was laid off and began receiving unemployment benefits while looking for work. R. 42. He stopped looking for work after November, 2011, when he went to the emergency room for a neck injury. R. 48. Duffy resides with friends in two different houses and has had this living arrangement for about one year. R. 44. He was previously living with his sister-in-law. R. 44. He also receives food stamps. R. 44.

On March 8, 2012, Duffy saw primary care physician Mohammed Khedr. R. 306. Duffy stated that he had not seen a doctor in twenty years and complained of neck pain radiating down his left arm. R. 306. Dr. Khedr prescribed medication and recommended an MRI of the cervical spine. R. 308.

On April 3, 2012, Duffy saw neurosurgeon Leslie Stern for neck pain of six months. R. 338. Dr. Stern noted marked restriction of neck extension and recommended physical therapy. R. 339.

At a June 7, 2012 follow-up appointment with Dr. Stern, Duffy reported continuing neck pain and told Dr. Stern that he

had been unable to attend physical therapy because he did not have transportation. R. 337. Dr. Stern prescribed Lodine and advised that he be re-evaluated if the pain progressed. R. 337.

On August 9, 2012, Duffy returned to Dr. Stern and reported increased neck pain and more frequent paresthesia in the left arm. R. 336. Dr. Stern found that Duffy's MRI scan showed degenerative disc disease primarily at C6-7 and also at C5-6. R. 336.

On September 11, 2012, Duffy underwent cervical fusion at C6-C7 and C5-C6 by Dr. Stern. R. 292. Post-surgery follow up indicated that Duffy had done well for two weeks after the surgery but that after that time, his neck pain became worse. R. 333.

A cervical spine MRI administered on March 22, 2013 revealed mild edematous changes within the C6 and C7 vertebrae, which were possibly related to recent surgery, and tiny subligamentous herniation at the C6-C7 level. R. 342. No cervical myelopathy was noted. R. 342.

On July 25, 2013, Duffy reported continuing neck pain and stated that turning his head and extending his head caused temporary paresthesia in the left arm. R. 329. Dr. Stern prescribed Oxycodone and a hard collar. R. 19, 329.

On October 13, 2013, Duffy reported to Dr. Stern that the hard collar helped with sleep and that he had less pain during

3

the day. R. 357. But Duffy would not wear the hard collar if he had to do a "fair amount" of walking because it bothered him. R. 357.

On May 8, 2014, Duffy began to see primary care physician Raanan Gilboa. R. 383. On physical examination, Duffy ambulated normally but had neck tenderness and pain with motion. R. 385. Dr. Gilboa's assessment was cervical disc disorder with radiculopathy and low back pain. R. 386.

A cervical spine MRI administered on May 29, 2014 revealed no significant change in multilevel central canal narrowing with mild cord impingement at the C3-C4 and C6-C7 levels. R. 371. A nerve conduction study on June 13, 2014 was indicative of carpal tunnel syndrome in the wrist with the left worse than the right. R. 391.

On July 7, 2014, Duffy saw neurologist Michael Gieger for cervical pain in the neck with radiation down the left arm and aggravation from neck extension. R. 19, 376. A physical examination showed normal range of motion and muscle strength in the upper and lower extremities. R. 378. However, flexion of the cervical spine was moderately limited and extension was severely limited due to pain. R. 378.

On August 28, 2014, Duffy saw neurologist Steven Hwang for neck and left arm pain. R. 410. Dr. Hwang stated that Plaintiff had full strength in all extremities except for mild bilateral

4

triceps weakness. R. 410. Duffy had pain to palpation of the neck. R. 410. Dr. Hwang recommended physical therapy and facet blocks. R. 411.

II. **Non-Examining Physician Reports**

The record contains administrative findings made by two state agency non-examining medical physicians. R. 21. State agency physician M. Douglass Poirier reviewed the medical evidence of record and rendered a residual functional capacity ("RFC") assessment in September 2013. R. 76-84. Dr. Poirier reviewed extensive medical evidence, including the neurological examination reports from Dr. Stern and reports from the September 2012 cervical spine surgery. R. 79. Dr. Poirier found exertional limitations (only occasional pushing and pulling), postural limitations (only occasional climbing, kneeling, and crouching), and manipulative limitations (limited overhead reach). R. 80-81.

State agency physician Jane Matthews reviewed Duffy's medical records in December 2013. R. 96-105. Dr. Matthews's RFC analysis included limitations similar to those found by Dr. Poirier. R. 101-03, 112.

III. **Hearing Before the ALJ**

A. **Duffy's Testimony**

Duffy testified about his physical condition before the ALJ on October 15, 2014. Plaintiff stated that he could sit for

5

fifteen to twenty minutes at a time before he would need to stand up. R. 48–49. He could stand for thirty minutes at a time before he would need to lie down. R. 49. He could walk for ten minutes before he would feel pain in his neck and back. R. 53. Duffy also stated that he had problems using stairs, kneeling, and reaching overhead, especially to the left. R. 54–55. Duffy is left-hand dominant and had difficulty writing. R. 56. He did not drive because of unpaid excise taxes and traveled by walking, getting rides from friends, or taking the bus. R. 58. When he went grocery shopping, he either got a ride to the store or walked half a mile to the store, with a five or ten minutes stop along the way. R. 58, 63. He was able to cook and clean, prepare fifteen- to twenty-minute meals, and visit his grandson once a week. R. 62-64.

**B. Vocational Expert's Testimony**

The vocational expert testified that Duffy's past relevant work experience included work as a glazer, metal fabricator, and material handler. R. 68. The ALJ asked the vocational expert to assume a hypothetical person with the following limitations:

> This person would be able to lift and carry 20 pounds occasionally, 10 pounds on a frequent basis. Would be able to stand and/or walk for six hours in an eight hour work day. Sit for six hours in an eight hour work day. This person would be limited to occasional pushing and pulling with the left upper extremity. This person would be able to climb stairs occasionally, would never be able to climb ropes, ladders or scaffolds. Would occasionally be able to stop, crouch, kneel and crawl.

6

> This person would only occasionally be able to reach
> overhead with the bilateral upper extremities.

R. 69. The vocational expert concluded that such a person would not be able to perform any of Duffy's past work but could perform other work, such as office helper, usher, or personal attendant. R. 69-70

The ALJ then asked the vocational expert to assume a second hypothetical person with the following limitations:

> This person would be able to lift and carry 20 pounds
> occasionally, ten pounds on a frequent basis. This
> person would be able to stand and/or walk for four hours
> out of an eight hour work day, sit for six hours out of
> an eight hour work day. Would occasionally be able to
> climb stairs and ramps, never ropes, ladders and
> scaffolds. Would occasionally be able to balance, stoop,
> crouch, kneel and crawl. This person would only
> occasionally be able to reach overhead with the
> bilateral upper extremities, and this person by the way
> is a left handed individual. This person would
> frequently be able to perform gross manipulation with
> bilateral upper extremities. Would frequently be able to
> perform fine manipulation with right upper extremity.
> Would occasionally be able to perform fine manipulation
> with the left upper extremity. This person would have to
> avoid concentrated exposure to unprotected heights.

R. 70-71. The vocational expert concluded that such a person would be able to perform the jobs of call out operator, surveillance monitor, or cashier. R. 72.

IV. **ALJ's Decision**

The ALJ found that Duffy was not disabled. At step one of his analysis, the ALJ found that Duffy had not engaged in substantial gainful activity since November 1, 2011. R. 16. At

7

step two, the ALJ found that Duffy had the following severe impairments: cervical degenerative disc disease status-post fusion, degenerative disc disease of the lumbar spine, and moderate bilateral carpal tunnel syndrome. R. 16.

At step three, the ALJ found that Duffy's impairments did not meet or medically equal any listed impairment. R. 17. The ALJ then found that Duffy retained the RFC:

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can lift twenty pounds occasionally and ten pounds frequently, stand/walk for four hours and sit for six hours out of an eight hour workday. The claimant can occasionally climb stairs/ramps but never climb ladders/ropes/ scaffolds. He can occasionally balance, stoop, crouch, kneel and crawl. He can occasionally reach overhead bilaterally with upper extremities. The claimant is left hand dominant and could frequently perform gross manipulation with bilateral upper extremities and frequently able to perform fine manipulation with the right upper extremity. He can occasionally perform fine manipulation with the left upper extremity and occasionally push/pull with the left upper extremity. Finally, he should avoid concentrated exposure to unprotected heights.

R. 17. In making this RFC determination, the ALJ considered Duffy's treatment records, his statements about his activities of daily living, and medical opinion evidence. R. 17–21. The ALJ noted that "the medical record contains no treating or examining source detailed opinions as to the claimant's physical functional abilities and limitations." R. 21. The ALJ did "consider[] the administrative findings of fact made by the state agency non-examining medical physicians" and stated that

"[w]hile . . . these opinions are from non-examining and non-treating expert sources, they are not inconsistent with the medical evidence as a whole, and are accorded great evidentiary weight." R. 21.

At step four, the ALJ found that Duffy could not perform any of his past relevant work as a glazer, metal fabricator, material handler, or forklift driver. R. 21-22.

At step five, the ALJ found that Duffy was not disabled because he could still perform other jobs existing in significant numbers in the national economy. R. 22. Specifically, the ALJ relied on the vocational expert's testimony that Plaintiff could be employed as a call out operator, surveillance system monitor, or cashier. R. 22.

## V. Procedural History

Duffy filed applications for disability insurance benefits and for supplementary security income on June 25, 2013, alleging disability beginning November 1, 2011. R. 14, 189-90, 191-99. The application was denied initially on September 26, 2013 and on reconsideration on December 10, 2013. R. 118-21, 123-28. Duffy requested a hearing before an ALJ and a hearing was held on October 15, 2014. R. 129-30, 36-75. On December 18, 2014, the ALJ issued the unfavorable decision described above. R. 14-27.

9

On March 10, 2016, the Appeals Council denied Duffy's request for review of the ALJ's decision, making the decision final pursuant to 42 U.S.C. § 405(g). R. 1-4.

**DISCUSSION**

I. **Standard of Review**

Judicial review of the Commissioner's decision is available pursuant to 42 U.S.C. § 405(g), which provides, in part, that:

> Any individual, after any final decision of the Commissioner made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision . . . The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the cause for a rehearing. The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive . . .

This Court's authority to review the Commissioner's decision "is limited to determining whether the [Commissioner] deployed the proper legal standards and found facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999). "The findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." Richardson v. Perales, 402 U.S. 389, 390 (1971) (quoting 42 U.S.C. § 405(g)). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. at 401. Courts must uphold the Commissioner's

determination "even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987). "Questions of law are reviewed de novo." Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001).

## II. Statutory and Regulatory Framework

The Commissioner has developed a five-step sequential evaluation process to determine whether a person is disabled. See 20 C.F.R. § 404.1520(a)(4). "Step one determines whether the claimant is engaged in substantial gainful activity. If he [or she] is, disability benefits are denied. If he [or she] is not, the decision-maker proceeds to step two, which determines whether the claimant has a medically severe impairment or combination of impairments." Bowen v. Yuckert, 482 U.S. 137, 140–41 (1987). The severity regulation requires the claimant to show that he or she has an "'impairment or combination of impairments which significantly limits . . .' 'the abilities and aptitudes necessary to do most jobs.'" Id. at 146 (quoting 20 C.F.R. §§ 404.1520(c), 404.1521(b)).

If the ALJ determines that the claimant has a severe impairment, the third step requires a determination as to whether that impairment or set of impairments "is equivalent to one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful

11

activity. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled." Id. at 141-42.

If the impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to the fourth step. At the fourth step, the ALJ must determine whether the claimant is prevented by the impairment from performing his previous occupation. If the claimant is able to perform his previous work, he is not disabled.

A finding that claimant cannot perform his previous work requires that the ALJ continue to the fifth and final step. Id. Throughout most of the five-step disability determination process, the burden of proof is on the claimant. See id. at 146 n. 5. At the fifth step, however, the burden shifts to the Commissioner, who must provide substantial evidence that the claimant is able to perform work in the national economy. If the claimant is not able to perform other available work, the claimant is entitled to disability benefits. Id. at 141-42.

### III. Analysis

#### A. RFC Evaluation

Duffy argues that the ALJ erred by not incorporating the limited range of motion in his neck into the RFC assessment. He points to evidence of that limited range of motion in his treatment records and argues that the ALJ erred by relying on

12

the medical opinions of two state agency non-examining physicians, which did not include such a limitation.

Duffy is correct that regulations require an ALJ to give more weight to a medical opinion submitted by a treating physician. 20 C.F.R. § 404.1527(d)(2). However, as the ALJ noted in his opinion, this record contains no treating or examining physician medical opinion as to Duffy's physical functional abilities and limitations. R. 21.

"As a lay person . . . the ALJ [i]s simply not qualified to interpret raw medical data in functional terms." Nguyen, 172 F.3d at 35. To render a determination of a claimant's functional capacity, "an expert's RFC evaluation is ordinarily essential unless the extent of functional loss, and its effect on job performance, would be apparent even to a lay person." Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 17 (1st Cir. 1996) (quoting Santiago v. Sec'y of Health & Human Servs., 944 F.2d 1, 7 (1st Cir. 1991)).

It would not be apparent to a lay person exactly what specific functional limitations result from the evidence in the treating records of Duffy's limited range of motion in his neck. Given the lack of any treating physician medical opinion that translate Duffy's limited neck range of motion into functional limitations, it was not error for the ALJ to rely to the opinions of the non-examining and non-treating sources upon

finding that they were consistent with the medical record as a whole.

State agency physician M. Douglass Poirier reviewed Duffy's medical evidence of record and rendered an RFC assessment in September 2013. R. 76-84. He reviewed, among other records, the neurological reports from Dr. Stern about Duffy's cervical spine surgery. R. 79, 88. He noted Duffy's complaints of neck pain and assigned exertional, postural, and manipulative limitations, including limitations on overhead reach. R. 81. Dr. Stern, however, did not assign any specific limitation pertaining to range of motion in the neck. In addition, state agency physician Jane Matthews reviewed Duffy's medical records in October 2013. R. 96-105. She found limitations similar to those found by Dr. Poirier. R. 102. The ALJ was entitled to rely on these medical opinions and as such, there was no error in the ALJ's RFC assessment.

In any event, the ALJ asked the vocational expert if there were jobs that Duffy could perform given an additional limitation of "only occasionally looking upwards and looking downwards." R. 73–74. The vocational expert stated that this limitation would only affect the occupation of cashier because the person would look down at the cash register. R. 73. But the vocational expert testified that Duffy would be able to work in the other two occupations even with the additional limitation

because a call out operator "just uses a telephone" and a surveillance systems monitor "would be walking -- looking straight ahead." R. 73. The ALJ determined that this testimony was consistent with the information in the Dictionary of Occupational Titles. R. 23.

**B.   Pain Evaluation**

Duffy argues that the ALJ erred in reaching negative credibility finding as to Duffy's statements concerning the intensity, persistence, and limiting effects of his pain.

In evaluating subjective complaints of pain, the ALJ must first determine whether there is a "clinically determinable medical impairment that can reasonably be expected to produce the pain alleged." Avery v. Sec'y of Health and Human Serv., 797 F.2d 19, 21 (1st Cir. 1986). When evaluating the clinical evidence, the ALJ must also consider "other evidence including statements of the claimant or his doctor, consistent with the medical findings." Id. However, "[t]his does not mean that any statements of subjective pain go into the weighing." Id. (emphasis in original). The ALJ, in resolving conflicts of evidence, may determine that the claimant's subjective complaints concerning his condition "are not consistent with objective medical findings of record." Evangelista v. Sec'y of Health and Human Serv., 826 F.2d 136, 141 (1st Cir. 1987).

15

With this evidence in hand, the ALJ must "evaluate the intensity and persistence of [the claimant's] symptoms so that [he or she] can determine how [the] symptoms limit [the claimant's] capacity for work." 20 C.F.R. § 404.1529(c). The regulations recognize that a person's symptoms may be more severe than the objective medical evidence suggests. See id. § 404.1529(c)(3). Therefore, the regulations provide six factors (known as the Avery factors) that will be considered when a claimant alleges pain.

> 1. The nature, location, onset, duration, frequency, radiation, and intensity of any pain; 2. Precipitating and aggravating factors (e.g. movement, activity, environmental conditions); 3. Type, dosage, effectiveness, and adverse side effects of any pain medication; 4. Treatment, other than medication, for relief of pain; 5. Functional restrictions; and 6. Claimant's daily activities.

Avery, 797 F.2d at 29.

"While a claimant's performance of household chores or the like ought not to be equated to an ability to participate effectively in the workforce, evidence of daily activities can be used to support a negative credibility finding." Teixeira v. Astrue, 755 F. Supp. 2d 340, 347 (D. Mass. 2010) (citing Berrios Lopez v. Sec'y of Health & Human Servs., 951 F.2d 427, 429 (1st Cir. 1991)). The ALJ's credibility determination "is entitled to deference, especially when supported by specific findings." Frustaglia v. Sec'y of Health and Human Serv., 829 F.2d 192, 195

(1st Cir. 1987). However, an ALJ who does not believe a claimant's testimony regarding his pain, "must make specific findings as to the relevant evidence he considered in determining to disbelieve the [claimant]." Da Rosa v. Sec'y of Health and Human Serv., 803 F.2d 24, 26 (1st Cir. 1986); see also Social Security Ruling (SSR) 96-7p, Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 61 Fed. Reg. 34,483, 34,485–86 (1996) (requiring that "[w]hen evaluating the credibility of an individual's statements, the adjudicator must . . . give specific reasons for the weight given to the individual's statements"; and "the reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision.").

Although the ALJ focused on Duffy's daily activities in his explanation of his decision, he adequately discussed the preceding five factors. For example, for the first factor, the ALJ discussed Duffy's medical history regarding his cervical spine, lumbar spine, and carpal tunnel syndrome. R. 18-20. The ALJ found that "[o]verall, the claimant's allegations of severe functional limitations caused by lower back pain, neck pain and bilateral carpal tunnel syndrome are not entirely supported by objective medical findings." R. 20. The ALJ addressed specific medical findings, including the fact that although Duffy had

cervical spine problems and had undergone surgical intervention, a post-surgery radiological scan indicated anatomic alignment and no cervical myelopathy was noted. R. 20.

For the second factor, the ALJ discussed, for example, Dr. Gieger's July 2014 report that noted that neck extension was an aggravating factor for Duffy's condition. R. 19.

For the third factor, the ALJ discussed Duffy's prescriptions for Lodine and Oxycodone and the periods of time in which Duffy did not take any medication, despite complaints of allegedly disabling symptoms. R. 18-19. Notably, the ALJ noted that Dr. Geiger reported in July 2014 that Duffy had not been prescribed pain medications. R. 21.

For the fourth factor, the ALJ discussed the hard collar and physical therapy. R. 19-20. The ALJ noted that Duffy stated that his hard collar improved his sleep and resulted in less pain during the day. R. 20. However, Duffy was bothered by the collar when doing a "fair" amount of walking. R. 20. Furthermore, Dr. Hwang suggested a course of physical therapy and facet blocks for lower back pain. R. 21.

For the fifth factor, the ALJ discussed Duffy's report that he could sit for fifteen to twenty minutes at a time and that after standing for half an hour, he would need to lie down. R. 18. In addition, the ALJ noted Duffy's problems using the

stairs, kneeling, and reaching overhead, especially on the left side. R. 18.

The ALJ concluded that Duffy's daily activities did not support the intensity, persistence, and limiting effects of these symptoms. R. 20. Duffy's ability to walk half a mile to the grocery store, prepare meals while standing, stand while cooking, use public transportation, clean, and visit his grandson once a week supported a finding that he is capable of a range of light work. R. 21. Such findings by an ALJ may support a negative credibility finding. Teixeira, 755 F. Supp. 2d at 347. The ALJ extensively discussed Duffy's subjective symptoms, and the ALJ's credibility findings were supported by substantial evidence. There was no error.

## ORDER

Duffy's motion to reverse the decision of the Commissioner (Docket No. 13) is **DENIED**. The Commissioner's motion to affirm (Docket No. 17) is **ALLOWED**.

/s/ PATTI B. SARIS_____
Patti B. Saris
Chief United States District Judge